WILLIAM E. BERGER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5601–77.     Filed April 27, 1981.

William E. Berger, pro se.
*Dennis R. Onnen,* for the respondent.

### OPINION

SCOTT, *Judge*: Respondent determined a deficiency in the joint Federal income tax of William E. Berger and Karen G. Berger[1] in the amount of $2,670.22 for calendar year 1973. The issue for decision is whether under section 104(a)(4), I.R.C. 1954,[2] petitioner is entitled to exclude from gross income any portion of the 1973 lump-sum readjustment pay that he received from the U.S. Army upon his involuntary discharge.

All of the facts have been stipulated and are found accordingly.

---

[1]Karen G. Berger is not a petitioner in this case.
[2]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue, unless otherwise stated.

William E. Berger (petitioner) and Karen G. Berger, husband and wife, who resided in Houston, Tex., at the time of filing the petition in this case, filed a joint Federal income tax return for calendar year 1973 with the Internal Revenue Service.

After completing 6 years, 7 months, and 10 days of military service, petitioner was discharged on September 10, 1973, from the U.S. Army pursuant to a reduction-in-force program. At that time, petitioner received a determination that he was entitled to readjustment pay from the U.S. Army pursuant to Pub. L. 676, 84th Cong., 2d Sess., 70 Stat. 517 (July 9, 1956). In 1973 petitioner received readjustment pay in the amount of $14,511.

Sometime between September 10, 1973, and January 16, 1974, petitioner filed a claim with the Veterans' Administration for compensation for service-connected injuries. On January 16, 1974, petitioner received a determination letter from the Veterans' Administration Center, which gave petitioner a 10-percent disability rating. In pertinent part the letter stated:

> Ordinarily, this evaluation would authorize payment of compensation at the rate of $28.00 per month. On your application for compensation, however, you indicated that you had received a lump sum readjustment payment from the Army. The law provides that compensation payments are subject to deduction of an amount equal to 75 percent of the amount received as readjustment pay.
>
> We have requested a certification from the Army as to the amount of your readjustment pay. When this is received, we will make an appropriate award and you will be further informed.

On his 1973 Federal income tax return petitioner reported wages, salaries, and other compensation in the amount of $14,341. Petitioner calculated this reported amount as follows:

| | |
|---|---:|
| Readjustment pay | $14,511.00 |
| Tax taken from readjustment pay | 2,902.20 |
| Balance of readjustment pay | 11,608.80 |
| Total readjustment pay | 14,511.00 |
| 75% of readjustment pay nontaxable | 10,883.25 |
| Taxable readjustment pay | 3,627.75 |

*Form W-2*

| | |
|---|---:|
| Wages paid subject to withholding | 22,544.52 |
| Nontaxable readjustment pay deducted | 10,883.25 |
| Revised wages subject to withholding | 11,661.27 |
| Wife's wages subject to withholding | 2,679.54 |
| Total wages subject to withholding | 14,340.81 (line 9) |

In his notice of deficiency respondent adjusted petitioner's taxable wages with the explanation that "It is determined that your taxable wages for the tax year 1973 is [sic] $22,544.52 rather than $14,341.00 as reported on your return. Accordingly, your taxable income in [sic] increased in the amount of $10,883.06."

Section 61(a) provides that gross income includes "all income from whatever source derived." Unless Congress has specifically exempted certain earned or unearned income from inclusion in the computation of gross income, the broad language of section 61(a) requires its inclusion. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955). Section 104(a)(4) provides such an exclusion from income for "amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces." Additionally, 38 U.S.C. sec. 3101(a) provides, in part, that "Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable * * * and such payments made to, or on account of, a beneficiary shall be exempt from taxation."

Petitioner recognizes that, normally, readjustment pay received pursuant to 10 U.S.C. sec. 687 is includable in gross income under section 61(a). See *Felman v. Commissioner*, 49 T.C. 599 (1968); *Woolard v. Commissioner*, 47 T.C. 274 (1966). However, petitioner takes the position that by virtue of his entitlement to disability compensation from the Veterans' Administration, 75 percent of the total $14,511 readjustment pay received in 1973 should be reclassified as disability compensation excludable from gross income under section 104(a)(4) and 38 U.S.C. sec. 3101(a).

On the other hand, respondent asserts that petitioner is not entitled to reclassify any portion of the readjustment pay and to exclude it from his 1973 gross income. He states that the amount received as readjustment pay was includable in petitioner's income when received in 1973 and that petitioner has pointed to no section of the Code which allows a deduction or exclusion of any portion of the payment. Respondent contends that neither section 104(a)(4) nor 38 U.S.C. sec. 3101(a) on which petitioner relies deals with or relates to readjustment pay. Respondent states that his position is supported by the legislative history of 10 U.S.C. sec. 687.

The predecessor to 10 U.S.C. sec. 687 was 50 U.S.C. sec. 1016, enacted as Pub. L. 676, 84th Cong., 2d Sess., 70 Stat. 517 (July 9, 1956), which amended the Armed Forces Reserve Act of 1952, Pub. L. 476, 82d Cong., 2d Sess., 66 Stat. 481 (July 9, 1952). In relevant part, Pub. L. 676, *supra*, provided:

Sec. 265. (a) A member of a reserve component who is involuntarily released from active duty * * * after having completed immediately prior to such release at least five years of continuous active duty * * * is entitled to a lump-sum readjustment payment computed on the basis of one-half of one month's basic pay in the grade in which he is serving at the time of release from active duty for each year of active service ending at the close of the eighteenth year.
* * *

Subsection (b) excepted certain classes of individuals from the general entitlement rule. Among those excepted were:

(6) A person who upon release from active duty is eligible for disability compensation under laws administered by the Veterans' Administration. However, such a person may elect to receive either readjustment pay under this section or disability compensation under laws administered by the Veterans' Administration, but not both. Election of readjustment pay shall not deprive a person of any disability compensation to which he may become entitled, on the basis of subsequent service, under laws administered by the Veterans' Administration.

50 U.S.C. sec. 1016 enabled a reserve military member involuntarily released from active duty to elect to receive a lump-sum readjustment payment, immediate disability compensation, severance pay, or separation pay. Duplicate payments were impermissible when eligibility would be based upon the same tour of active duty. S. Rept. 2288, 84th Cong., 2d Sess. (1956), reprinted in U.S. Code Cong. & Adm. News 3061 (1956).[3]

---

[3]On Nov. 17, 1955, Joseph Campbell, Comptroller General of the United States, wrote a letter to Senator Richard B. Russell, Chairman, Committee on Armed Services, summarizing the effects of S. 2258, a bill similar to the statute enacted. This letter was made a part of S. Rept. 2288. Some of Mr. Campbell's suggestions were incorporated into Pub. L. 676. In pertinent part, the letter stated:

"With respect to the disability compensation, such compensation may be paid because of service prior to the officer's entry upon the period of active duty for which he is eligible to receive readjustment payment, or the disability might arise during such latter period of active duty. Obviously, under no circumstances should disability compensation on account of a preexisting disability be affected by a readjustment payment, nor should such compensation arising out of a subsequent tour of active duty be so affected. Presumably it was intended in subsection (b)(6) that an election be made only as to a disability compensation payable because of a disability incurred or increased during the current period of active duty. If that be so, in view of the time normally required to establish entitlement to the disability compensation, we

In 1959, Pub. L. 86–324, 86th Cong., 1st Sess., 73 Stat. 596 (Sept. 21, 1959), amended 50 U.S.C. sec. 1016. The modification provided that the term "a member of a reserve component" includes "a member of the Army or Air Force without specification of component."

In 1962, 50 U.S.C. sec. 1016 was again amended by the enactment of Pub. L. 87–509, 87th Cong., 2d Sess., 76 Stat. 120 (June 28, 1962). As amended, 50 U.S.C. sec. 1016, subsection (b)(6), provided:

> (6) Except as provided in this clause, a person who upon release from active duty is eligible for disability compensation under laws administered by the Veterans' Administration. However, such a person may receive readjustment pay under this section in addition to disability compensation subject to deduction from the disability compensation of an amount equal to 75 percent of the readjustment pay. Receipt of readjustment pay shall not deprive a person of any part of any disability compensation to which he may become entitled, on the basis of subsequent service, under laws administered by the Veterans' Administration.

Additionally, Pub. L. 87–509, *supra*, provided in section 3 that—

> Sec. 3. Notwithstanding an election under section 265(b)(6) of the Armed Forces Reserve Act of 1952 (50 U.S.C. 1016(b)(6)), before the date of enactment of this Act, to receive a readjustment payment under that section, any person who made such an election may be awarded disability compensation to which he is otherwise entitled, subject to deduction as provided in that section, as amended by this Act. However, such an award may not become effective for any period before the date of enactment of this Act.

The purposes of these amendments were explained in S. Rept. 1096, 87th Cong., 1st Sess. (Sept. 20, 1961), reprinted in U.S. Code Cong. & Adm. News 1783, 1786 (1962). The Senate reasoned that—

> Under existing law a reserve is required to choose between readjustment pay and disability compensation from the Veterans' Administration. This election has been held to be irrevocable so that a person who has received readjustment pay cannot receive compensation from the Veterans' Administration to which he may subsequently become entitled. Since at the time of their release from active duty some persons have latent disabilities without

---

doubt that ordinarily an officer, as a practical matter, could make an election unless he refuses to accept the readjustment payment until his claim for disability compensation is settled. Nevertheless, the bill requires him to elect between them. If he does elect to receive the readjustment payment, the bill is silent as to whether he waives forever any and all rights to disability compensation or merely waives such compensation up to the amount of the readjustment payment * * * "

realizing that these disabilities will later be found to be service connected, this irrevocable election has created hardships. The proposed solution is to permit receipt of the VA compensation after deduction of three-fourths of the readjustment pay previously received. The fractional recovery is proposed in order to take into account the tax paid on the original payment and to avoid recoupment of an amount in excess of the net received as readjustment pay. Section 3 of the bill prevents retroactive payments of compensation from the Veterans' Administration but permits prospective receipt of this compensation subject to the deduction of three-fourths of the readjustment pay previously received.[4]

To clarify and codify the substantive provisions of recent military law, Congress enacted Pub. L. 89–718, 89th Cong., 2d Sess., 80 Stat. 1115 (Nov. 2, 1966). The pertinent portion of this law was codified in 10 U.S.C. sec. 687, which provides:

(a) Except for members covered by subsection (b), a member of a reserve component or a member of the Army or the Air Force without component who is released from active duty involuntarily * * * and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to a readjustment payment computed by multiplying his years of active service * * * but not more than eighteen, by two months' basic pay of the grade in which he is serving at the time of his release. * * *

(b) Subsection (a) does not apply to a member who—

\* \* \* \* \* \* \*

(6) upon release from active duty, is immediately eligible for disability compensation under a law administered by the Veterans' Administration and who elects to receive that compensation.

However, a member covered by clause (6) may receive a readjustment payment under this section and disability compensation if an amount equal to 75 percent of the readjustment payment is deducted from the disability compensation. This subsection does not prevent a member who elects to receive a readjustment payment under this section from becoming entitled to disability compensation based on his service performed after he makes that election.

---

4See also the Aug. 4, 1961, letter from Cyrus R. Vance, General Counsel of the Department of Defense, written to Congressman Carl Vinson, Chairman, Committee on Armed Services, which letter was made a part of S. Rept. 1096. In pertinent part, the letter specified the purpose of modification to be as follows:

"(b) Amend section 265(b)(6), Armed Forces Reserve Act of 1952, which requires an irrevocable choice between readjustment pay and VA disability compensation, to permit the payment of severance pay with subsequent eligibility for VA compensation, subject to recoupment of severance pay from VA compensation.

"Existing readjustment pay was authorized to assist Reserve members in making the transition from military to civilian life. VA compensation is based upon a service-connected disability. Experience has shown that the best interest of the Government and the Reserve members would be served by authorizing severance pay at the time of release from active duty, and subsequently permitting the receipt of VA compensation upon recoupment of severance pay."

The legislative history reveals the congressional awareness of the plight of servicemen who have been involuntarily released from active duty, and, who as a result of their recently aborted service, are immediately entitled to both a lump-sum readjustment payment and disability compensation.[5] It is clear that Congress realized that in such a case the veteran ordinarily would receive the readjustment pay prior to filing his application for or receiving from the Veterans' Administration a determination of his entitlement to disability compensation. Congress determined that in these instances it was unfair to require an involuntarily discharged serviceman to immediately choose between the rights to receive readjustment pay and disability compensation. Therefore, Congress provided that these veterans would receive readjustment pay and that upon subsequent confirmation of entitlement to disability compensation, the readjustment pay in essence would be repaid to the Government by a deduction from the disability compensation equal to three-quarters of the readjustment pay previously received. One purpose of this fractional adjustment was to compensate the veteran for taxes paid on the readjustment income, in this way not diminishing in real monetary terms the amount the veteran would be entitled to receive as disability compensation.

Congress could have enacted a law which would have allowed the immediate exclusion of readjustment payments from taxation by those involuntarily discharged servicemen who received a lump-sum readjustment payment and who, as a result of a service-connected injury arising from the aborted active duty, became immediately entitled to receive disability compensation from the Veterans' Administration. However, Congress did not choose to have the lump-sum readjustment payments treated in this manner. Congress deliberately determined that a veteran covered by 10 U.S.C. sec. 687(b)(6) would be permitted to receive Veterans' Administration disability compensation upon restor-

---

[5]Pursuant to 38 U.S.C. sec. 3010(b), the "effective date of an award of disability compensation to a veteran shall be the day following the date of his discharge or release if application therefor is received within one year from such date of discharge or release." In the instant case, petitioner was discharged on Sept. 10, 1973, and applied for his disability rating and the award of disability compensation prior to Jan. 16, 1974. Because less than 1 year had elapsed between the time of his discharge and his application, the effective date of the disability compensation award was Sept. 11, 1973.

ing to the Government that 75-percent portion of the readjustment payment not regarded as previously allocated to the payment of taxes. Pursuant to this mechanism, each disability compensation payment would in effect be exempt from taxation at the time of its receipt.

Petitioner asserts that the rationale of *Strickland v. Commissioner*, 540 F.2d 1196 (4th Cir. 1976), revg. a Memorandum Opinion of this Court, should control. In that case, the taxpayer retired as an Army colonel in 1964. Shortly thereafter, he began receiving retirement pay. Subsequently he applied to the Veterans' Administration for service-connected disability benefits and was awarded a 10-percent disability rating. This disability rating entitled the taxpayer to payments of $30 per month, which were later increased to $32 per month. To receive the payment of this award the taxpayer was required to file VA Form 21–651, which he filed on March 10, 1965. By completing and filing the form, the taxpayer expressly waived that portion of his retirement pay "which [was] equal in amount to the compensation * * * which may be awarded by the Veterans' Administration." *Strickland v. Commissioner, supra* at 1197. In March 1966, the taxpayer filed another claim with the Veterans' Administration requesting an increase in his disability compensation. On January 17, 1967, the Veterans' Administration redetermined the taxpayer's disability rating at 100 percent from March 28, 1966. Therefore, as of March 28, 1966, the taxpayer became entitled to disability compensation in the amount of $240. On February 1, 1967, the taxpayer filed a new VA Form 21–651 waiving his right to $240 of his retirement pay. On his tax return for calendar year 1966, the taxpayer excluded from his gross income the increased amount of disability benefits to which he had become retroactively entitled. The Commissioner took the position that since the increased disability benefits had not been paid to the taxpayer as disability compensation, but instead had been paid as retirement pay, the increased amounts were not exempt from gross income.

In reversing the Tax Court, the Circuit Court in *Strickland* held that the taxpayer was entitled to exclude from gross income the increased amounts attributable to the retroactive application of the increased disability compensation. The Circuit Court held that the increased disability compensation was retroactively effective and was not conditioned upon the taxpay-

er's filing a second waiver. Since the taxpayer had previously waived his right to retirement pay equal to the amount of disability compensation to which he was entitled, the entire $240 per month disability compensation to which the taxpayer was entitled as of March 28, 1966, was excludable from his gross income.

The facts in *Strickland v. Commissioner, supra,* are clearly distinguishable from the facts in the instant case. The retirement payments for which the taxpayer was eligible in the *Strickland* case were available on the grounds of longevity of service. Retirement payments are a form of a pension in that they provide an income for a future period, the amount of which is based upon the earnings paid during prior active duty. In contrast, in the case at bar, the purpose of the readjustment payment was to provide a monetary cushion to soften the transition from military to civilian life. The readjustment payment is a one-time payment to protect the individual against economic dislocation when discharged untimely. Moreover, the taxpayer in the *Strickland* case had previously executed a form to waive his entitlement to a certain portion of his retirement pay. It had already been established that the taxpayer was entitled to exclude a portion of his receipts from his gross income; the question concerned the amount excludable. That is not the situation in the instant case.

As of September 10, 1973, petitioner had the uncontested right and the unrestricted use of the entire $14,511 of readjustment pay. Neither section 104(a)(4) nor 38 U.S.C. sec. 3101 relates to readjustment pay. The fact that petitioner was entitled to disability compensation as reduced by a certain portion of the readjustment pay does not cause the taxable income to be recategorized as excludable from gross income. See *Woolard v. Commissioner,* 47 T.C. 274, 279 (1966).

Because of respondent's concession that petitioner is entitled to compute his tax on the basis of income averaging,

*Decision will be entered under Rule 155.*