JOSEPH EDWARD CUSTIS and SHIRLEY MAY CUSTIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Custis v. Commissioner
Docket No. 18780-80.
United States Tax Court
T.C. Memo 1982-642; 1982 Tax Ct. Memo LEXIS 100; 45 T.C.M. (CCH) 40; T.C.M. (RIA) 82642; November 8, 1982. Joseph Edward Custis, pro se. Glenn D. Wilkinson, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a $2,257 deficiency in petitioners' 1977 federal income tax. The issue for decision is whether any part of a $15,000 amount which petitioner Joseph Edward Custis received from the Air Force on completion of his military service is excludable from income under section 104(a)(4). [1]
*101 Joseph Edward Custis will be referred to in this opinion as the petitioner because this case concerns only the characterization of his end-of-service lump-sum payment. FINDINGS OF FACT Some of the facts have been stipulated. [2] The stipulation and attached exhibits are incorporated herein by reference. Petitioners resided in Cheyenne, Wyoming, when they filed the petition in this case. Petitioner was involuntarily discharged from the United States Air Force on June 30, 1977, after twice being passed over for promotion to the rank of major. Petitioner completed 15 years, 2 months and 16 days in military service. On June 30, 1977, petitioner received a $15,000 lumpsum readjustment payment from the United States pursuant to the provisions of 10 U.S.C. section 687 (1976). [3]
*102 Also on June 30, 1977, petitioner completed an application for Veterans Administration ("VA") disability benefits. Petitioner filed the application with the VA on July 20, 1977. The VA issued a rating decision on August 9, 1977, which determined that petitioner had a 20 percent disability rating. By letter dated August 18, 1977, the VA notified petitioner that: You are entitled to receive $70.00 monthly compensation effective July 1, 1977, based on this 20% evaluation except for the receipt of readjustment pay received at the time you were discharged from service. The law requires that we recoup 75% of the readjustment pay received before we can begin paying you the compensation you are entitled to. We have forwarded a request to the Service Department for the amount of readjustment pay you received. When this is received, we will withhold your compensation payments until 75% of your adjustment pay is recouped. By letter dated November 9, 1977, the VA further notified petitioner that: "We have received notification from the Service Department of the award of $15,000.00 readjustment pay at the time you were discharged from the service. Accordingly, we are withholding *103 your monthly compensation payments of $70 effective July 1, 1977, and $75 effective October 1, 1977, (increase due to legislation) until we have recovered the $11,250.00 readjustment pay you received which is 75% of the total amount. On February 21, 1979, petitioner filed a claim to have his disability rating increased. The VA issued a rating decision on May 5, 1979, which determined that petitioner's disability rating was increased to 50 percent. By letter dated May 9, 1979, the VA notified petitioner that he would be entitled to increased disability compensation because of the higher disability rating as soon as the readjustment payment had been properly recouped. Petitioner began receiving VA disability compensation on July 1, 1981, because 75 percent of the $15,000 readjustment payment had been recouped at that time. Petitioner reported only 25 percent of $15,000 readjustment payments as income in 1977. Respondent's statutory notice of deficiency determined that the entire $15,000 amount should be included in petitioner's 1977 taxable income. OPINION Petitioner received a $15,000 lump-sum readjustment payment on discharge from the Air Force in 1977. Petitioner later *104 became entitled to monthly VA disability compensation. However, the VA had to withhold petitioner's disability compensation until the amount withheld recouped 75 percent of the readjustment payment. Petitioner excluded 75 percent of the readjustment payment from his 1977 taxable income. Petitioner argues that the VA's 75 percent recoupment changed the nature of 75 percent of the readjustment paymene into a disability payment which is excludable from gross income under section 104(a)(4) and 38 U.S.C. section 3101(a) (1976). We rejected a similar argument by the taxpayer in Berger v. Commissioner,76 T.C. 687 (1981). Petitioner presented no arguments which question the validity of that decision. Accordingly, we will apply the Berger rule if it is applicable on the facts of this case. In Berger v. Commisioner,supra, the taxpayer received a $14,511 lump-sum readjustment payment when he was involuntarily discharged from the United States Army. He received the readjustment payment pursuant to 10 U.S.C. section 687 (1976), the relevant parts on which provide: § 687. Non-Regulars: readjustment *105 payment upon involuntary release from active duty (a) Except for members covered by subsection (b), a member of a reserve component or a member of the Army or the Air Force without component who is released from active duty involuntarily, or because he was not accepted for an additional tour of active duty for which he volunteered after he had completed a tour of active duty, and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to a readjustment payment computed by multiplying his years of active service (other than in time of war or of national emergency declared by Congress after June 28, 1962), but not more than eighteen, by two months' basic pay of the grade in which he is serving at the time of his release. However, a member who is released from active duty because his performance of duty has fallen below standards prescribed by the Secretary concerned, or because his retention on active duty is not clearly consistent with the interests of national security, is entitled to a readjustment payment computed on the basis of one-half of one month's basic pay of the grade in which the member is serving at the time of his *106 release from active duty. A person covered by this subsection may not be paid more than two years' basic pay of the grade in which he is serving at the time of his release or $15,000 whichever amount is the lesser. * * * (b) Subsection (a) does not apply to a member who-- (6) upon release from active duty, is immediately eligible for disability compensation under a law administered by the Veterans' Administration and who elects to receive that compensation. However, a member covered by clause (6) may receive a readjustment payment under this section and disability compensation if an amount equal to 75 percent of the readjustment payment is deducted from the disability compensation. This subsection does not prevent a member who elects to receive a readjustment payment under this section from becoming entitled to disability compensation based on his service performed after he makes that election. After his discharge the taxpayer in Berger v. Commissioner,supra, applied for and became entitled to receive VA disability compensation. But, pursuant to the rules contained in 10 U.S.C. section 687(b)(6) (1976), the taxpayer could receive *107 the VA disability compensation only after 75 percent of the $14,511 readjustment payment had been recouped through withholding. The taxpayer excluded 75 percent of the $14,511 payment from his taxable income. After a detailed analysis of the statutes and legislative history we held that the taxpayer had to include the entire amount of the readjustment payment in his taxable income for the year he received it. In our opinion we said: The legislative history reveals the congressional awareness of the plight of servicemen who have been involuntarily released from active duty, and, who as a result of their recently aborted service, are immediately entitled to both a lump-sum readjustment payment and disability compensation. It is clear that Congress realized that in such a case the veteran ordinarily would receive the readjustment pay prior to filing his application for or receiving from the Veterans' Administration a determination of his entitlement to disability compensation. Congress determined that in these instances it was unfair to require an involuntarily discharged serviceman to immediately choose between the rights to receive readjustment pay and disability compensation. *108 Therefore, Congress provided that these veterans would receive readjustment pay and that upon subsequent confirmation of entitlement to disability compensation, the readjustment pay in essence would be repaid to the Government by a deduction from the disability compensation equal to three-quarters of the readjustment pay previously received. One purpose of this fractional adjustment was to compensate the veteran for taxes paid on the readjustment income, in this way not diminishing in real monetary terms the amount the veteran would be entitled to receive as disability compensation. Congress could have enacted a law which would have allowed the immediate exclusion of readjustment payments from taxation by those involuntarily discharged servicemen who received a lump-sum readjustment payment and who, as a result of a service-connected injury arising from the aborted active duty, became immediately entitled to receive disability compensation from the Veterans' Administration. However, Congress did not choose to have the lump-sum readjustment payments treated in this manner. Congress deliberately determined that a veteran covered by 10 U.S.C. sec. 687(b)(6) *109 would be permitted to receive Veterans' Administration disability compensation upon restoring to the Government that 75-percent portion of the readjustment payment not regarded as previously allocated to the payment of taxes. Pursuant to this mechanism, each disability compensation payment would in effect be exempt from taxation at the time of its receipt. [76 T.C. at 693-694] [footnote omitted]. We concluded that "[t]he fact that petitioner was entitled to disability compensation as reduced by a certain portion of the readjustment pay does not cause the taxable income to be recategorized as excludable from gross income." 76 T.C. at 695. At first blush the Berger rule seems applicable to the facts of this case. However, petitioner argues that Berger is distinguishable on the following grounds: (1) he was a regular Air Force officer whereas Berger and 10 U.S.C. section 687 (1976) pertain only to reservists; (2) he applied for VA benefits before or at the time of his discharge whereas the taxpayer in Berger applied for VA benefits after leaving the service; (3) he did not make a conscious election to take the *110 taxable lump-sum readjustment payment instead of tax-free periodic VA disability compensation; and (4) the Air Force mischaracterized his lump-sum payment as readjustment pay instead of characterizing it as disability pay. We will analyze these contentions separately. First, petitioner argues that Berger is distinguishable because Berger pertains only to reservists whereas he was a regular Air Force officer. Berger concerned readjustment payments under 10 U.S.C. section 687 (1976). Only non-regular personnel qualified for such payments. 10 U.S.C. section 687(a) (1976). Petitioner has the burden of proving that he was a regular Air Force officer and, thus, outside of the scope of 10 U.S.C. section 687 (1976). Rule 142(a). On the basis of the record in this case we conclude that petitioner failed to satisfy this burden of proof. [4] Petitioner testified at trial that he was a regular Air Force officer. He also introduced a copy of his discharge order and a copy of his report of separation from active duty, each of which identified him as Joseph E. Custis, Capt. RegAF.Other evidence in the record, *111 however, indicates that petitioner was a reservist. For instance, he indicated that he was a reservist on his application for VA disability compensation when he completed the inquiry "If reservist or national guardsman, give periods of active duty," with the response "Aug. 58 thru June 1977." Also, petitioner's $15,000 discharge payment apparently was made as a 10 U.S.C. section 687 "readjustment payment." On the application for VA disability compensation petitioner responded "Yes" to a question inquiring whether he had ever received a lump-sum "readjustment payment." He also identified the $15,000 amount which he received on discharge as a "readjustment payment" on that application. In addition, the VA had to identify petitioner's $15,000 payment because different types of discharge payments required different types of recoupment procedures. The VA checked with the Air Force and confirmed that the $15,000 amount was a "readjustment payment." Accordingly, the VA applied the withholding *112 rules contained in 10 U.S.C. section 687(b)(6) (1976) for recouping 75 percent of the payment. Petitioner identified no provision of law other than 10 U.S.C. section 687 which provided "readjustment pay" on discharge. Accordingly, it appears that the Air Force thought that petitioner was a reservist because it paid him the $15,000 as 10 U.S.C. section 687 "readjustment pay." The VA confirmed this conclusion. And petitioner accepted the readjustment pay designation when he accepted the money and when he completed his application for VA disability compensation. Based on these facts in the record we must told that petitioner failed to satisfy his burden of proving that he was a regular Air Force officer. Accordingly, we conclude that the $15,000 amount which petitioner received on discharge was a 10 U.S.C. section 687 (1976) readjustment payment. [5]
*113 Petitioner's second and third arguments for distinguishing Berger v. Commissioner,supra, involve similar considerations. Petitioner asserts that the Berger taxpayer applied for the VA disability compensation after his discharge whereas petitioner in this case applied for the VA benefits at the same time as or before his discharge. He also argues that he never got the chance to elect the tax-free VA disability compensation instead of the taxable readjustment pay. Petitioner's arguments are inapposite. Our analysis in Berger of 10 U.S.C. section 687 (1976) and its legislative history indicates that the statute was designed to eliminate the need for servicemen to elect readjustment pay over disability compensation, or vice versa, and to eliminate any risk attaching to the timing of their application for either or both benefits. Berger v. Commissioner,76 T.C. at 693. If a taxpayer receives readjustment pay then it is includible in the taxpayer's income. If the taxpayer also is entitled to disability pay then it is withheld to recoup the previously paid lump-sum readjustment payment. But only 75 percent of *114 the readjustment payment is recouped "to compensate the veteran for taxes paid on the readjustment income, in this way not diminishing in real monetary terms the amount the veteran would be entitled to receive as disability compensation." 76 T.C. at 693. By enacting the 75 percent recoupment Congress brought recipients of taxable readjustment pay and recipients of tax free VA disability compensation into rough parity.Thus Congress obviated the need to explicitly elect one alternative over the other and rendered irrelevant the timing of claims for VA benefits. Accordingly, we hold that petitioner's second and third arguments for distinguishing Berger are inapposite. He received readjustment pay in 1977. It is includible in his income for that year. Petitioner's final argument for distinguishing Berger is that the Air Force made a mistake in characterizing the $15,000 amount received on discharge as a taxable readjustment payment rather than as a tax-free disability severance payment. We need not consider this argument because petitioner did not introduce evidence that he was entitled to tax-free disability severance pay or that the Air Force in fact made *115 a mistake. Rule 142(a). Accordingly, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We note that petitioner Shirley May Custis did not sign the stipulation of facts. Shirley May Custis was notified of the trial but failed to appear for trial. Consequently, we could dismiss the case as to Shirley May Custis for failure to properly prosecute. Rule 149(a). Instead, we will decide the case as though Shirley May Custis had signed the stipulation.↩
3. This readjustment payment provision was repealed by the Defense Officer Personnel Management Act sec. 109(a), Pub. L. 96-513, 94 Stat. 2835, 2870 ("Act"). The repeal was effective Sept. 15, 1981. Act, supra,↩ sec. 701, 94 Stat. at 2955. Thus, the repeal did not affect petitioner who received his readjustment payment in 1977.
4. We note that the additional material which petitioner attached to his brief is not evidence of record. Therefore, we may not consider it in the disposition of this case.↩
5. Petitioner failed to identify the statutory provision under which he could have received the $15,000 discharge payment if it was not a 10 U.S.C. section 687 (1976) payment. We could not determine the tax status of such a payment without reviewing the provisions of the statute under which petitioner was paid, including its recoupment provisions, legislative history, etc. Petitioner of course, has the burden of showing a specific provision exempting the $15,000 amount from his income. See, Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 430↩ (1955). We note, without having to decide the issue in this case, that it would be difficult for petitioner to satisfy this burden without identifying for the Court the specific provisions under which he was paid.