LELAND W. WOOLARD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 193–65. Filed December 8, 1966.

Leland W. Woolard, pro se.

*Vernon J. Owens*, for the respondent.

OPINION

RAUM, *Judge:* In 1962, petitioner became entitled to, and received, readjustment pay in the amount of $12,300 under the provisions of the Act of June 28, 1962, Public Law 87–509, *supra,* p. 276, because he was involuntarily released from active duty as a reserve officer in the U.S. Air Force on June 30, 1962, after completion of approximately 16 years of service. That law provided in part, however, that the future retirement pay of such officer who might retire after 20 years of service must be reduced by an amount equal to 75 percent of the readjustment pay, without interest. The reason for requiring such reduction in retirement pay appears in a letter from the Defense Department to the Chairman of the Senate Committee on Armed Services, which was incorporated in S. Rept. No. 1096, 87th Cong., namely, to preclude dual crediting of time for both retirement pay and readjustment pay. And the reason for limiting the reduction in the retirement pay to only 75 percent of the readjustment pay also appears in the same Senate committee report, namely, that the remaining 25 percent would in general be utilized to pay taxes upon the readjustment pay. In this connection the committee report stated (pp. 5, 6) :

The committee recommendation is that for those persons who qualify for retired pay based on 20 years of active duty after having received readjustment payments, three-fourths of the readjustment payments must be repaid before the person begins the receipt of retired pay. The reason for not requiring full repayment is that without considering the taxes paid on the readjustment pay a Reserve would be required to repay more than the net he had received as readjustment pay. Since the tax consequences for different Reserves would vary, depending upon their other income, the committee decided that a three-fourths repayment is reasonable.

It is thus clear that the Senate committee understood that the readjustment payment would be subject to tax, and it arbitrarily selected 25 percent as an average rate that would be applicable to the servicemen covered by the statute.

Petitioner contends that the Commissioner erred in including the portion of the readjustment pay amounting to $9,225 which he received in 1962 in his taxable income for that year. He argues that on June 26, 1962, he applied for and agreed to accept readjustment pay of $4,200 under the provisions of the Act of July 9, 1956, Public Law No. 676 (set forth in our findings) ; that this law contained no provision for repayment of readjustment pay in the event the applicant subsequently qualified for retirement pay; that he never applied for or agreed to accept readjustment pay under the provisions of the Act of June 28, 1962, Public Law 87–509, which was in effect on June 30, 1962, when he was released from active duty; that in August 1962 he received a check from the Air Force for $12,300 which represented the amount of readjustment pay he was entitled to receive under Public Law 87–509; that inasmuch as he had not agreed to accept readjustment pay under that law he returned the check to the Air Force; that after he had reenlisted to complete his retirement eligibility the Air Force returned the check to him and he accepted it because he had no other choice; that under the provisions of Public Law 87–509 he became obligated to repay 75 percent of $12,300, or $9,225, from the moment it was received because he had already reenlisted to qualify for retirement; that in the circumstances he never had unrestricted use of, or full dominion over, the $9,225 in 1962; and that since he had only temporary use of this money and it had to be repaid in later years, it represented the proceeds of a "loan" and did not constitute taxable income for 1962.

We do not agree with petitioner. At the time he was involuntarily released from active duty in the Air Force on June 30, 1962, the Act of July 9, 1956, Public Law No. 676, had been superseded by the Act of June 28, 1962, Public Law 87–509, and the amount of readjustment pay he was entitled to receive and the amount he would have to "repay" in the event he subsequently completed the 20 years of active service which qualified him for retired pay, were governed by the provisions of Public Law 87–509. In August 1962, he received from the Air Force a check for $12,300 which was the amount of readjustment pay he was entitled to receive under that law. Although he returned that check to the Air Force he accepted it when it was subsequently returned to him in that year and thus became obligated to comply with the provisions of the law with respect to "repayment." There is no merit to petitioner's contention that from the moment the check was returned and accepted by him he became obligated to "repay" 75 percent of $12,300, or $9,225, because he had prior thereto reenlisted to qualify for retirement. Under the provisions of Public Law 87–509, the obligation to "repay" 75 percent of the readjustment pay received did not arise when he reenlisted to qualify for retirement.

It arose if, and when, after reenlistment, he completed the 20 years of active duty which qualified him for retired pay. Inasmuch as in 1962, when he received the readjustment pay, he had to complete approximately 3 years of additional active duty before he became eligible for retired pay, no obligation to "repay" any part of that pay then existed, and in the absence of such an obligation, there is no justification for treating part of the readjustment pay received in that year as the nontaxable proceeds of a loan. In 1962 there existed merely the possibility that 75 percent of the readjustment pay might be reflected in a reduced retirement annuity, a contingency that depended at the very least upon his being alive and remaining in the the Armed Forces until the date of retirement. And upon the happening of that contingency he would then be taxed only upon the reduced annuity in the future years and not upon the gross amount thereof.

In these circumstances the proper tax treatment of these payments is to treat the readjustment pay as taxable income when received in 1962, and to tax only the reduced amounts of retirement pay in future years when and if paid to petitioner. In short, petitioner is taxable upon the amounts actually received in the years that he receives them. Whether the case be looked upon as one with a reduced retirement annuity in future years or one in which petitioner would be required to "repay" 75 percent of the readjustment pay out of that annuity, the result must be the same. For even if the latter view be taken, petitioner meanwhile had the unrestricted and uncontested right to use the entire readjustment pay for his own purposes, subject only to restoring a portion thereof out of retirement pay, if he should in fact retire in a later year. The mere fact that income received by a taxpayer may have to be returned at some later time does not deprive it of its character as taxable income when received. Cf. *Healy* v. *Commissioner*, 345 U.S. 278; *North American Oil* v. *Burnet*, 286 U.S. 417, 419; *Whitaker* v. *Commissioner*, 259 F. 2d 379, 382–383 (C.A. 5); *Phillips* v. *Commissioner*, 238 F. 2d 473, 475–476 (C.A. 7). Here the payment represented additional compensation for service in the Air Force. See Rev. Rul. 58–496, 1958–2 C.B. 20. It was income when received.

*Decision will be entered for the respondent.*