JOHN W. HENDRIX and ROSA K. HENDRIX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hendrix v. Commissioner
Docket No. 23906-81.
United States Tax Court
T.C. Memo 1983-704; 1983 Tax Ct. Memo LEXIS 76; 47 T.C.M. (CCH) 413; T.C.M. (RIA) 83704; November 29, 1983. William Y. Wilkins, for the petitioners. Alan I. Weinberg and Gary F. Walker, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined a deficiency of $22,600.49 in petitioners' 1978 Federal income tax. After concessions by respondent, the sole issue for decision is whether petitioners are liable for minimum tax, pursuant to section 56, [1] in the amount determined by respondent, on account of certain long-term capital gains realized by them in 1978. *78 This case has been submitted fully stipulated pursuant to the provisions of Rule 122. The stipulations of fact, together with the exhibits attached thereto, are incorporated herein by this reference. John W. (hereinafter "petitioner") and Rosa K. (hereinafter "Rosa"), Hendrix, husband and wife, (hereinafter collectively referred to as "petitioners"), resided at Lexington, South Carolina at the time the petition was filed in this case. Petitioners timely filed their original joint 1978 Federal income tax return, and an amended return for 1978, on the cash method of accounting, with the Internal Revenue Service Center at Memphis, Tennessee. Petitioners' amended 1978 return was mailed on December 17, 1979. Prior to and during 1978, petitioner was the sole shareholder and director of The Lexington, Inc. (hereinafter "Lexington"), a South Carolina corporation which operated an apartment complex. Lexington filed its Federal income tax returns on the basis of a fiscal year ending June 30. On September 15, 1978, Lexington adopted a plan of complete liquidation and, pursuant to the plan, sold substantially all of its assets to McDonald Associates, Inc., a third party purchaser. *79 The proceeds of the sale included cash and a note in the sum of $210,000, secured by a second mortgage on the apartment complex Lexington had theretofore owned. During 1978, Lexington distributed the $210,000 note and mortgage to Rosa, as nominee for petitioner, as part of the liquidation plan. Additionally, Lexington distributed to petitioner the cash proceeds of the sale of the apartment complex and substantially all of its other liquid assets, in complete liquidation. The above distributions in liquidation of Lexington were made pursuant to a resolution of the board of directors and shareholders of Lexington, which provided as follows: 3. Resolved, the Directors and Shareholders of The Lexington, Inc. adopt a plan of liquidation for the corporation under the Internal Revenue Code of 1954 by which plan the corporation shall commence immediately on completion of the sale to McDonald Associates, Inc. to distribute to its Shareholders or their nominees such long-term receivables, together with the mortgage which secures said receivables, and such cash as may not be required to pay expenses and to effect the orderly transfer of the property to McDonald Associates, Inc., or their *80 nominees or otherwise wind up the affairs of the Lexington, Inc. The complete liquidation of Lexington was accomplished prior to December 31, 1978. Lexington filed articles of dissolution with the South Carolina Secretary of State on September 27, 1979. On their amended 1978 Federal income tax return, petitioners reported a long-term capital gain of $373,150.91 from the liquidation of Lexington and included $186,575 of that amount as taxable income on line 14 of their amended return. Thus, petitioners claimed a section 1202 deduction of $186,575 with respect to their $373,150.91 capital gain. The total $373,150.91 capital gain reported by petitioners on their 1978 amended return was the amount by which the Lexington liquidation proceeds received in 1978 by petitioner and Rosa as nominee of petitioner exceeded petitioner's cost basis in his Lexington stock. Petitioners did not report any liability for tax under section 56 on their 1978 Federal income tax returns. On September 30, 1980, the State of South Carolina determined that Lexington owed a State income tax of $35,844.30 for its fiscal year ending June 30, 1979. Petitioners paid $22,800 of this State tax liability in *81 1981, and paid the remaining amount of this liability, $13,844.30, in 1982. Respondent contends that the $373,150.91 reported by petitioners on their 1978 amended return, as capital gain from the liquidation of Lexington, generated a tax preference item totalling $186,575 (the amount of petitioners' section 1202 capital gain deduction) under section 57(a)(9)(A) and maintains that petitioners are therefore liable for minimum tax under section 56 computed by reference to this $186,575. Petitioners do not dispute the applicability of the section 56 minimum tax to section 57(a)(9)(A) items of tax preference. Petitioners do contend, however, that the capital gain realized by them in 1978 (and therefore the section 57(a)(9)(A) item of tax preference), should be reduced by the amount of Lexington's fiscal year 1979 State income taxes which they were required to pay in 1981 and 1982. In support of this position, petitioners argue that the amounts paid by them to discharge Lexington's State income tax liability should be deemed to have been held by them in trust for the State of South Carolina, and therefore should not be considered to represent part of their amount realized upon the *82 liquidation of Lexington in 1978. Petitioners maintain that their "trust" theory is supported either by the fact that Rosa, a nonshareholder, received liquidating distributions from Lexington, or by section 33-21-220, Code of South Carolina Laws, 1976. As an "alternative" argument, petitioners contend that they "overpaid" their 1978 Federal income taxes and argue that they are therefore entitled to offset the alleged overpayment against the deficiency asserted by respondent in his statutory notice. Petitioners rely upon section 6402 in support of this "alternative" contention. For the reasons stated herein, we agree with respondent. Taxpayers are required to compute their income on the basis of an annual accounting period. Section 441; Healy v. Commissioner,345 U.S. 278, 281 (1953). In computing their annual taxable income, cash method taxpayers must generally include all items which constitute gross income in the year in which the items are actually or constructively received. Section 1.446-1(c)(1)(i), Income Tax Regs. Under the familiar "claim of right" doctrine, items of income will be deemed to be received (and therefore includable in gross income) in *83 full in the taxable year of receipt if the items are received by the taxpayer under a claim of right, without restriction as to their use or disposition, even if the taxpayer is under a contingent obligation to return the amount received and is, in fact, required to restore such amounts in a later taxable year. As stated by the United States Surpeme Court in the landmark case of North American Consolidated Oil Co. v. Burnet,286 U.S. 417, 424 (1932): If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. [Citations omitted] See also Nordberg v. Commissioner,79 T.C. 655 (1982); Hope v. Commissioner,55 T.C. 1020 (1971), affd. 471 F.2d 738 (3d Cir. 1973), cert. denied 414 U.S. 824 (1973); Woolard v. Commissioner,47 T.C. 274 (1966). For purposes of determining the applicability of the claim of right doctrine to a particular *84 case, funds actually received by a taxpayer will be considered to have been received without restriction unless "in the year of receipt a taxpayer recognizes his liability under an existing and fixed obligation to repay the amount received and makes provisions for repayment." Hope v. Commissioner,supra at 1030; Nordberg v. Commissioner,supra at 665. Where a taxpayer is required to include in income amounts received under a claim of right and in a subsequent year is required to repay a portion of the amounts, or use the amounts to discharge the obligation of the transferor of the funds, the taxpayer may then be entitled to a deduction or credit in the later year to the extent allowed by law. Section 1341; Krim-Ko Corp. v. Commissioner,16 T.C. 31, 40 (1951). However, the amounts required to be included in the taxpayer's income for the year of receipt remain unaffected. Nordberg v. Commissioner,supra at 665. Thus, under the claim of right doctrine, the receipt by petitioners of the Lexington liquidation proceeds in 1978 must trigger the incidence of taxation with respect to the full amount of those *85 proceeds unless, in 1978, petitioners were under an existingandfixed liability to pay Lexington's fiscal 1979 State income taxes and petitioner made provisions for such payment. Hope v. Commissioner,supra at 1030; Nordberg v. Commissioner,supra at 665. Neither of these requisites were satisfied by petitioners in 1978. Initially, petitioners were under no existingandfixed liability to pay Lexington's fiscal 1979 State income taxes as of December 31, 1978. At that time it could not be determined whether any liability for such taxes would even materialize. Lexington's State tax liability was assessed for Lexington's fiscal year ending June 30, 1979, and such assessment was not made by the South Carolina Tax Commissioner until September 30, 1980. Thus, as of December 31, 1978, it was not even clear that Lexington's fiscal 1979 State income tax return would be audited by State authorities and, if audited, whether any deficiency in tax would become due.Under these circumstances, petitioners' liability for Lexington's State taxes cannot be considered to have been existing and fixed on December 31, 1978. *86 Rather, such liability was highly contingent at that time. Cf. Healy v. Commissioner,supra at 283-284. In addition to failing to satisfy the existing and fixed obligation requirement, it is clear in this case that petitioners made no "provision" for payment of Lexington's potential fiscal 1979 State income tax liabilities prior to December 31, 1978. In this regard, petitioners contend that the liquidation proceeds distributed to petitioner and to Rosa should be deemed to have been hald in "trust" for the South Carolina Tax Commission to the extent that these funds were ultimately used by petitioners to discharge Lexington's State income tax liability. Petitioners attempt to attach significance to the fact that Rosa, a nonshareholder, received liquidating distributions from Lexington. Additionally, it appears that petitioners believe that the joint resolution of the board of directors and shareholders of Lexington, pursuant to which the assets of Lexington were distributed in complete liquidation, established an actual trust in favor of the South Carolina State Tax Commission in 1978. It is clear, however, that the resolution of the board of directors *87 established no actual trust either with respect to the assets distributed to Rosa or those distributed to petitioner. That resolution provided in relevant part: 3. Resolved, the Directors and Shareholders of The Lexington, Inc. adopt a plan of liquidation for the corporation under the Internal Revenue Code of 1954 by which plan the corporation shall commence immediately on completion of the sale to McDonald Associates, Inc. to distribute to its Shareholders ortheirnominees such long-term receivables, together with the mortgage which secures said receivables, and such cash as maynotberequiredtopayexpensesandtoeffecttheorderlytransferofthepropertytoMcDonaldAssociates,Inc.,ortheirnomineesorotherwisewinduptheaffairsoftheLexington,Inc. [Emphasis supplied]. This provision makes it clear that any distributions received by Rosa were received by her as nominee of petitioner and not as trustee for the South Carolina State Tax Commission. Accordingly, petitioners' attempt to attach significance to the fact that *88 Rosa, a nonshareholder, received liquidating distributions from Lexington, is without merit. Nor was an express trust created with respect to the assets distributed to petitioner. An express trust is created only if the purported settlor properly manifests an intention to create a trust. There must, that is, be an outward expression of the settlor's intention that the transferee-trustee hold property thenceforth for the benefit of another. See generally Scott, The Law of Trusts, section 23 (3d ed. 1967). However, no intention of petitioner or Rosa to hold the liquidation proceeds for the benefit of the South Carolina Tax Commission was manifested in the above-quoted resolution.To the contrary, the language of the resolution makes it clear that all property transferred in liquidation of Lexington would be held by the transferees for the sole benefit of petitioner. In fact, assets which were thought to be necessary to wind up the affairs of Lexington were not to be distributed in liquidation. Under these circumstances, we must conclude no express or implied trust was created in favor of the South Carolina Tax Commission in 1978 by virtue of the liquidating resolution of the shareholders *89 and board of directors of Lexington. Petitioners also attempt to derive support for their contention that a trust was created in favor of the South Carolina State Tax Commission in 1978 from section 33-21-220, Code of South Carolina Laws, 1976. That statute provides in relevant part: (b) Afterdissolution of a corporation, the directors as of the date of dissolution, or the survivors of such directors, shall be deemed liquidating trustees of the corporation with authority to take all action necessary or appropriate to dispose of any undistributed property of the corporation. (Emphasis supplied] Petitioners' reliance upon this provision is misplaced. Initially, the provision becomes operative only afterdissolution of a corporation. In this case, Lexington did not file articles of dissolution with the South Carolina Secretary of the State until September 27, 1979. Thus, section 33-21-220, Code of South Carolina Laws, 1976, could not have operated to create an actual trust in favor of the State Tax Commission in 1978. More fundamentally, however, this statute applies only with respect to "undistributed property of the corporation." In this case, all *90 of the assets of the corporation which generated capital gain to petitioners in 1978 were distributed to them in that year. Therefore, section 33-21-220, Code of South Carolina Laws, 1976, by its very terms, has no application to those distributed assets. It is thus clear in this case that the amounts distributed from Lexington to petitioners in 1978 cannot be deemed to have been subject to any restriction on its use during that year under a "trust" theory, as petitioners contend. Nor did petitioner make any other "provision" for payment of Lexington's then contingent State tax liability at that time. Indeed, the fact that petitioners reported the full amount of the proceeds of the Lexington liquidating distributions on their 1978 Federal income tax returns indicates that they received proceeds of the distributions under a claim of individual right and not as trustees. See Healy v. Commissioner,supra at 283. Since petitioners have not established that the liability here in issue was "existing and fixed," in 1978 or that they made "provision" for payment of such liability in that year, we hold that the full amount of the capital gain realized by them from *91 the liquidation of Lexington was properly reported on their 1978 amended return. Moreover, since that capital gain generated a tax preference item of $186,575 under section 57(a)(9)(A), we further hold that petitioners are liable for the minimum tax imposed by section 56 for 1978, as determined by respondent. One final argument must be addressed. Petitioners urge that even if they are liable for the section 56 minimum tax for 1978 in the full amount determined by respondent, they should be allowed to reduce the amount of minimum tax owed by the amount of Federal income taxes they paid in 1978 which were attributable to the $35,844.30 State income taxes they were required to pay for Lexington in 1981 and 1982. Petitioners point out that the State income taxes were paid in 1981 and 1982 our of Lexington liquidation proceeds and argue that their liquidation proceeds were effectively reduced thereby and that they therefore "overpaid" their Federal income taxes in 1978. Petitioners rely upon section 6402(a) as authority. Section 6402(a) as applicable to the year in issue provided: (a) General Rule.-- In the case of any overpayment, the Secretary, within the applicable period *92 of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person. Section 6402(a) provides petitioners with no support. That statute simply provides authority to the Secretary of the Treasury to refund, or offset against taxes due, amounts by which a taxpayer has overpaid his taxes. As fully discussed previously in this opinion, petitioners did not overpay their Federal income taxes in 1978, but rather paid income taxes only on amounts they received under a claim of right in that year. In fact, we have found that petitioners have underpaid their 1978 Federal income taxes. We therefore reject petitioners reliance on section 6402(a). Although petitioners' payment of Lexington's State tax liabilities in 1981 and 1982 does ultimately operate to reduce the total amount of liquidation proceeds retained by them, they nevertheless had full use of these proceeds until they were required to pay Lexington's State taxes in 1981 and 1982. Moreover, petitioners are, of course, entitled to deduct those *93 payments on their 1981 and 1982 returns to the extent allowed by law. Alternatively, petitioners may be entitled to invoke the provisions of section 1341 which, in effect, provide a credit in the years petitioners paid the State income taxes for the amount of tax that would have been saved in 1978 if the amount of the State taxes had been excluded from petitioners' 1978 gross income. They would not, however, be entitled to adjust their 1978 Federal income tax which is due and owing for that year to reflect these payments. Accordingly, we sustain respondent's determination except to the extent that respondent has conceded items no longer in issue herein. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All references to Rules herein are to the Tax Court Rules of Practice and Procedure. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically stated.↩