JOHN L. CONNELLY, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9838–81.     Filed April 18, 1984.

*Nancy J. Ruhl*, for the petitioner.
*Jillena A. Warner*, for the respondent.

OPINION

GOFFE, *Judge*: This matter is before us on petitioner's motion for judgment on the pleadings pursuant to Rule 120.[1] Petitioner, after the case was at issue, filed a request for admissions to which respondent replied. The Court served notice setting the case for trial on the merits, whereupon after the service of notice but before the trial, respondent filed motion for leave to file amendment to answer, and petitioner filed motion for a judicial determination and written opinion. Respondent's motion was filed in order to concede the case. The parties filed responsive pleadings to the respective motions and a hearing on the motions was held in Jackson, Miss. After careful consideration of the motions, responses, and arguments of the parties, we denied respondent's motion for leave to file amendment to answer and granted petitioner's motion for a judicial determination and written opinion. Our rulings on the motions were based upon our decision in *McGowan v. Commissioner*, 67 T.C. 599 (1976).

Petitioner filed motion for judgment on the pleadings at the hearing in Jackson, Miss., which we took under advisement. The parties subsequently filed briefs. The sole issue presented is whether petitioner may exclude from his 1975 income a portion of his retirement pay to the extent of the $11,250

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended.

repayment of readjustment pay not absorbed by the 1974 exclusion.

The facts are not in dispute and are adequate for purposes of disposing of petitioner's motion for judgment on the pleadings.

Petitioner was living in Alexandria, Va., when he filed the petition in this case. He filed an individual Federal income tax return for the taxable year 1975 with the Internal Revenue Service Center at Memphis, Tenn.

Petitioner was a reserve commissioned officer in the U.S. Air Force. In 1970, after 16 years of military service, he was involuntarily released from active duty. That same year, he received a lump-sum readjustment payment of $15,000 pursuant to 10 U.S.C. sec. 687 (1978).[2] Upon receiving the $15,000 in 1970, petitioner properly included it in gross income and paid income tax on it.

Petitioner then reenlisted and qualified for military retirement in 1974. Upon retiring, petitioner was subject to the following provision of 10 U.S.C. sec. 687(f) (1978):

(f) If a member who received a readjustment payment under this section after June 28, 1962, qualifies for retired pay under any provision of this title or title 14 that authorizes his retirement upon completion of twenty years of active service, an amount equal to 75 percent of that payment, without interest, shall be deducted immediately from his retired pay.

Petitioner, therefore, was required to repay $11,250 (75 percent of $15,000 readjustment pay). The Headquarters Air Force Accounting and Finance Center advised petitioner by letter that his retired pay was being withheld pending recoupment of $11,250 of the readjustment pay received by petitioner in 1970. The letter notified him that Public Law 87–509 required recoupment in full before release of any retired pay. It further offered him the option of remitting a lump-sum payment or installment payments to the Air Force. In the absence of such direct remittance, he was advised that full retired pay would be withheld for 14 months until a total of $11,250 had been recouped.

Petitioner chose the first option. He paid the entire $11,250 at once in 1974 and thereupon began receiving regular

---

[2] 10 U.S.C. sec. 687 (1978), which provided for petitioner's readjustment pay, was repealed by the Defense Officer Personnel Management Act, Pub. L. 96–513, sec. 109(a), 94 Stat. 2835, 2870. The repeal, effective Sept. 15, 1981, does not affect petitioner.

monthly Air Force retirement pay with no diminution for the readjustment pay.

In 1974 and 1975, petitioner received retirement pay of $3,273.20 and $10,750.22, respectively. On his income tax return for 1974, petitioner excluded from gross income that portion of his $11,250 repayment of readjustment pay equal to the retirement pay he received in 1974, or $3,273.20. On his return for 1975, he excluded from gross income the remaining portion of the readjustment pay repayment not previously excluded, $7,976.80.

The Commissioner, in the statutory notice of deficiency mailed to petitioner, determined that the $7,976.80 excluded from gross income by petitioner on his return for 1975, was not allowable as an adjustment to income or as a deduction. The disallowance, offset by allowance of the retirement income credit, produced a deficiency in income tax for the taxable year 1975 in the amount of $1,328.40.

Petitioner relies upon Rev. Rul. 67–350, 1967–2 C.B. 58, wherein the Commissioner held without citation of authority that a taxpayer in the identical position as petitioner could exclude from gross income that portion of the retirement payments to the extent of the repayments of readjustment pay withheld each month from retirement pay (described above as the second option available to petitioner). That revenue ruling in part provides:

The effect of Public Law 87–509 is that the retired reservist cannot receive any monies by reason of his retirement until such time as the retired pay to which he would be entitled but for the prior readjustment payment exceeds 75 percent of such readjustment payment. Accordingly, only the remainder of a retired reservist's retired pay, after its required reduction by an amount equal to 75 percent of any readjustment payment previously received, is includible in his gross income.

Petitioner argues that irrespective of the form of payment, viz, lump-sum repayment or recoupment by installments withheld from retirement pay, the principle involved is the same. Having paid consideration for the right to receive retirement payments in the future, petitioner is entitled to exclude from income that portion of his retirement pay which represents a return of the consideration paid in order to receive the retirement pay. We agree with petitioner.

Respondent's argument is simply that petitioner should not be permitted to reduce his gross income by the lump-sum repayment because there is no provision in the Internal Revenue Code which permits him to do so.

Respondent, aware that his position in the instant case is inconsistent with his own revenue ruling, attempts to dismiss the inconsistency by stating on brief that this revenue ruling is currently under reconsideration by the Internal Revenue Service and further that the perceived "double benefit has been eliminated under current law which provides for the recoupment of 100 percent (rather than 75 percent) of readjustment pay upon qualifying for retirement pay."[3] Instead, respondent couches his supporting arguments in his interpretation of the statute's legislative history. The resulting theory is inherently contradictory and, moreover, misses the point.

Petitioner is requesting only that he be treated the same as any other reservist who, having received readjustment pay, is subsequently required to pay it back. That the Commissioner is now dissatisfied with his almost 20-year policy of allowing an exclusion *at all* is of no concern to us.

Prior to the enactment of Pub. L. 87–509, 76 Stat. 120, 121, military personnel who received lump-sum readjustment pay were barred from subsequently becoming eligible for retirement pay. Congress decided, however, that in many cases this forced election produced harsh results. Pub. L. 87–509 was designed to permit those servicemen who had received lump-sum readjustment pay to qualify for retirement pay upon repaying a substantial portion of the previously received readjustment pay. The reason for requiring the repayment of the readjustment pay or reduction in retirement pay was to preclude dual crediting of time for both retirement pay and readjustment pay. And the reason for limiting the repayment or reduction to 75 percent of the readjustment pay is Congress' assumption that the remaining 25 percent would, hypothetically, have been used to pay taxes on the readjustment pay.

The Senate Armed Services Committee report, with respect to Pub. L. 87–509, recommended in part:

The committee recommendation is that for those persons who qualify for retired pay based on 20 years of active duty after having received

---

[3]See note 2.

readjustment payments, three-fourths of the readjustment payments must be repaid before the person begins the receipt of retired pay. The reason for not requiring full repayment is that without considering the taxes paid on the readjustment pay a Reserve would be required to repay more than the net he had received as readjustment pay. *Since the tax consequences for different Reserves would vary, depending upon their other income, the committee decided that a three-fourths repayment is reasonable.* [S. Rept. 1096, to accompany H.R. 8773 (Pub. L. 87–509), 87th Cong., 1st Sess. 4, 5–6 (1961). Emphasis added.]

It is apparent from the legislative history of Pub. L. 87–509 that Congress did not intend to permit a veteran to receive the double benefit of readjustment pay and retirement pay. It is also clear that Congress anticipated that the net tax consequences of the recoupment of readjustment pay would vary among reservists depending upon their other income.

Respondent argues against the exclusion claiming that Congress intended to place reservists who received readjustment pay prior to retirement in a position *exactly* equal to those reservists who receive only retirement pay. Respondent states that "If a veteran is permitted to exclude or deduct his repayment of 75 percent of the readjustment pay previously received, he is, in substance, receiving both benefits." Respondent illustrates his position by an example depicted in tabular form as follows:

25-Percent Tax Bracket

|  | Major A | | Major B |
|---|---|---|---|
|  | With E[1] | Without E[2] |  |
| Readjustment pay - year 1 | $100.00 | $100 |  |
| Less tax due | (25.00) | (25) |  |
| Net received - year 1 | 75.00 | 75 |  |
| Retirement pay - year 2 | 100.00 | 100 | $100 |
| Less repayment of readjustment pay | (75.00) | (75) |  |
| Less tax due | (6.25) | (25) | (25) |
| Net received - year 2 | 18.75 | 0 | 75 |
| Total net received for both years | 93.75 | 75 | 75 |

[1]With exclusion from gross income of $75 repayment.
[2]Without exclusion from gross income of $75 repayment.

On brief, respondent argues that if Major A is permitted to exclude from gross income the $75 he repaid in year 2 on

account of his readjustment pay, he would end up with a taxable income of $25 on which he would owe tax of $6.25. On the other hand, Major B, who also receives $100 of income in year 2, must pay a tax of $25. Thus, Major A ends up with a windfall of $18.75 [$200 total payments received − ($31.25 tax plus $75 repayment) = $93.75].

Without the exclusion of the $75 in year 2, respondent argues that Major A's tax liability would be $25, giving him an after-tax benefit of $75 in year 1 and $0 in year 2. "Economically," respondent asserts, "Major A has now received a total after-tax benefit of $75 which is exactly the same benefit received by Major B." Respondent concludes that:

The law was thus designed by Congress to produce substantial, although not exact, parity between veterans in the respective positions of Majors A and B. This parity can only be achieved if Major A is not permitted a deduction in year 2 for the repayment of his readjustment pay.

Respondent's theory fails inspection because of one major flaw: it works only when both taxpayers are in the 25-percent tax bracket. As our hypothetical examples below indicate, the results will not be equal in any other situation.

30-Percent Tax Bracket

|  | Major A | | Major B |
|---|---|---|---|
|  | With E | Without E |  |
| Readjustment pay - year 1 | $100.00 | $100 |  |
| Less tax due | (30.00) | (30) |  |
| Net received - year 1 | 70.00 | 70 |  |
| Retirement pay - year 2 | 100.00 | 100 | $100 |
| Less repayment of readjustment pay | (75.00) | (75) |  |
| Less tax due | (7.50) | (30) | (30) |
| Net received - year 2 | 17.50 | (5) | 70 |
| Total net received for both years | 87.50 | 65 | 70 |

50-Percent Tax Bracket

| | Major A | | Major B |
|---|---|---|---|
| | *With E* | *Without E* | |
| Readjustment pay - year 1 | $100.00 | $100 | |
| Less tax due | (50.00) | (50) | |
| Net received - year 1 | 50.00 | 50 | |
| Retirement pay - year 2 | 100.00 | 100 | $100 |
| Less repayment of readjustment pay | (75.00) | (75) | |
| Less tax due | (12.50) | (50) | (50) |
| Net received - year 2 | 12.50 | (25) | 50 |
| Total net received for both years | 62.50 | 25 | 50 |

So in addition to being mathematically incorrect, respondent has taken a position totally inconsistent with his own revenue ruling. Respondent does attempt to distinguish this revenue ruling by arguing that it "only specifically applies to the situation where the readjustment repayment is withheld from retired pay." The language in the legislative history uses "recoupment," "repayment," "immediate deduction," and "reduction" more or less interchangeably and, therefore, does not support this strict interpretation. Furthermore, we cannot imagine a policy, nor has respondent suggested one, which would justify different treatment based upon the form of the repayment. This is particularly so when the economic effect of the withholding method is tantamount to an interest-free loan to the retiree who also gets the exclusion.

Having rejected respondent's arguments, we are convinced that petitioner has adequately demonstrated his entitlement to an exclusion from income of an amount equal to the consideration paid as a condition precedent to the receipt of full military retirement pay.

Section 61(a) defines gross income as "all income from whatever source derived." It also provides for specific exclusions. Among them is the exclusion for a return of capital in the case of a pension or an annuity. See sec. 72(b) and secs. 1.61–10 and 1.61–11, Income Tax Regs. The theory underlying this exclusion is that a portion of each payment received under an annuity contract normally represents part return of the original capital invested and part income earned on the

investment. Usually, where the employee makes no contribution to the cost of the annuity, the taxpayer must include the full amount received in income. When the employee does contribute to the cost of the annuity, section 72 provides that a portion of the payment may be excluded from gross income. Sec. 1.61–11(a), Income Tax Regs.

Petitioner's payment of $11,250, a condition precedent to receiving his retirement pay, is comparable to and, for our purposes, indistinguishable from the purchase of an annuity contract and, therefore, governed by section 72. Although Rev. Rul. 67–350, 1967–2 C.B. 58, cites no authority for allowing an exclusion from gross income where the required amounts are withheld over time rather than paid at once, the only logical conclusion is that the excluded amounts constitute a return to the taxpayer of consideration paid for the annuity.

Section 72 prescribes the rules relating to the inclusion in gross income of amounts received under an annuity contract. In general, these rules provide that:

amounts subject to the provisions of section 72 are includible in the gross income of the recipient except to the extent that they are considered to represent a reduction or return of * * * consideration paid. [Sec. 1.72–1(a), Income Tax Regs.]

This treatment is consistent with *Woolard v. Commissioner,* 47 T.C. 274 (1966), where a reserve commissioned officer received readjustment pay upon release from active duty after 16 years. In the year of receipt of his readjustment pay, the taxpayer included in income the difference between his readjustment pay and the 75 percent he would be required to repay if and when he became eligible for retirement pay. The Commissioner determined that the excluded amount was taxable income to the taxpayer in the year received. Judge Raum held for respondent, observing in dicta:

In these circumstances the proper tax treatment of these payments is to treat the readjustment pay as taxable income when received * * *, and to tax only the reduced amounts of retirement pay in future years when and if paid to [taxpayer]. * * * Whether the case be looked upon as one with a reduced retirement annuity in future years or one in which petitioner would be required to "repay" 75 percent of the readjustment pay out of that annuity, the result must be the same. * * * [47 T.C. at 279.]

Years later in *Feistman v. Commissioner*, 63 T.C. 129, 133 (1974), appeal dismissed 587 F.2d 941 (9th Cir. 1978), taxpayers attempted to exclude from income their payments to a retirement fund. Judge Raum again held that the tax liability of the taxpayer-employees is determined in respect of their wages as earned but that "corresponding tax benefits accrued to them when they received payments from the retirement fund upon retirement or otherwise." 63 T.C. at 133.

Although dicta, these statements support our conclusion that petitioner, having once paid tax on the income, should not be required to do so twice. Further, they presume that the amounts paid as consideration for the retirement pay would be excluded from income later when returned to the taxpayer.

There is, of course, no question that petitioner's readjustment pay is not a loan or a gift but is taxable income in the year received. *Woolard v. Commissioner, supra.* The fact that petitioner repaid an amount included in income in a previous year and that petitioner and the Government are now "even" as to the readjustment pay has no bearing upon petitioner's Federal income tax consequences. Under the anomalous facts of petitioner's case, he has paid consideration for the receipt of an annuity.[4]

Section 72, in general, provides a formula for determining the part of each payment that constitutes a return of the annuity's cost (excludable from income) and that part which is ordinary income. The excludable portion of an annuity is calculated on an annual basis by multiplying the total amount of annuity payments received during the year by an exclusion ratio. The exclusion ratio is determined by dividing the amount invested in the annuity as of the annuity starting date by the expected return under the contract. Sec. 72(b) and sec. 1.72–4, Income Tax Regs.[5]

Section 72(d), however, contains a special de minimus rule which may apply when an employer and an employee both contribute to the cost of the annuity. If the payments under

---

[4]Petitioner concedes that for the majority of retired pay recipients who have not received readjustment pay there is no consideration paid and, therefore, all payments received are included in income.

[5]This formula may be expressed as:

$$Excludable\ amount = \frac{Investment\ in\ contract}{Expected\ return} \times \frac{Annuity\ payments}{for\ year}$$

the annuity during the first 36 months will equal or exceed the employee's contributions, then all payments received are tax free until the employee's total contribution is recovered. Thereafter, everything is fully taxable. In *Heard v. Commissioner,* 40 T.C. 7 (1963), affd. 326 F.2d 962 (8th Cir. 1964), cert. denied 377 U.S. 978 (1964), we applied section 72(d) to a Civil Service retirement annuity. 40 T.C. at 14. The issue in *Heard* was whether an amount received by the taxpayer under the Civil Service Retirement Act was an annuity taxable under section 72(d). We held that it was. The Court of Appeals affirmed our decision but based its holding on section 61(a). The court observed, however, that:

whether or not sec. 72 applies, the result is the same—i.e., the amount received under the Act in excess of the amount contributed to the retirement program by taxpayer is taxable income. [326 F.2d at 968.]

We note that the Commissioner has acknowledged that a Civil Service employee who resigns and later reenters Civil Service employment and who elects to repay to the U.S. Civil Service Retirement and Disability Fund the amounts withdrawn from that fund when he resigned, may include the amounts repaid as part of his investment in the contract pursuant to section 72(d). Rev. Rul. 74–138, 1974–1 C.B. 29.[6] We hold that in the instant case, the situation is sufficiently akin to an annuity contract to justify similar treatment. 40 T.C. at 12. Accordingly, petitioner's motion for judgment on the pleadings is granted.

*An appropriate order will be entered.*