T.C. Memo. 2004-78

UNITED STATES TAX COURT

RICHARD R. HAMLETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8986-01.                    Filed March 22, 2004.

        In 1996, P sold his stock in two S corporations to
Parker for $100,000.  P received some of the $100,000 from
Parker in 1995, and the remainder in 1996, and transferred
his stock to Parker "effective" Dec. 31, 1995.  P did not
report the transaction on his 1995 and 1996 tax returns.  In
1998, P filed for bankruptcy.  In 2000, the bankruptcy court
entered a consent order which, among other things, declared
the stock transfer void ab initio.  On the same day, P
executed a 6-percent interest promissory note to Parker for
$135,000 (the $100,000 for the corporations plus $35,000 for
some partnership interests P sold to Parker, also in 1996).
By late 2003, P's total payments to Parker under the
promissory note amounted to little more than the interest on
the note.

        1.  <u>Held</u>:  Under the claim of right doctrine, P is
required to include the $100,000 in income for 1996 as
proceeds from the sale of the S corporations stock.

2. Held, further, P's alternative contention, that the $100,000 was excludable from income because it was a gift from Parker, is rejected.

Craig D. Bell, for petitioner.

Dustin M. Starbuck, for respondent.

MEMORANDUM OPINION

CHABOT, Judge: Respondent determined deficiencies in individual income tax and penalties under section 6662[1] (accuracy-related) against petitioner as follows:

| Year | Deficiency | Penalties Sec. 6662 |
|------|-----------|---------------------|
| 1995 | $118,980 | $23,796.00 |
| 1996 | 746,843 | 149,368.60 |

_____

[1] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for the years in issue.

After concessions by both sides,[2] the issue for decision is whether petitioner must include in gross income for 1996 the $100,000 that he received from the sale of stock, even though in a later year the sale was challenged and in 2000 the sale was set aside ab initio.[3]

## Background

The instant case was submitted fully stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

---

[2] The notice of deficiency lists an aggregate of more than $2.5 million of adjustments for the 2 years in issue. The parties have resolved more than 96 percent of this amount. What remains is a vigorous dispute as to the tax treatment of $100,000--less than 4 percent of these adjustments.

Petitioner concedes that the accuracy-related penalty under sec. 6662 applies to the entire deficiencies for both years in issue.

In the notice of deficiency, the $100,000 was determined to be ordinary income. On answering brief, respondent concedes that the $100,000 should be treated as long-term capital gain (agreeing with one of petitioner's alternative contentions), thus reducing even further the percentage of the originally determined deficiency remaining in dispute.

[3] The parties have stipulated that some payment on the $100,000 was made by the purchaser to petitioner in 1995. The record does not indicate how much was paid in 1995, nor does it indicate when in 1996 the payment of the $100,000 was completed. In the notice of deficiency, respondent lists the entire $100,000 as an adjustment to 1996. Both parties treat the transaction, and accordingly, any income recognition resulting therefrom, as occurring entirely in 1996. For purposes of this opinion, we do the same.

We also note that petitioner has not provided us with any evidence regarding his basis in the stock.

When the petition was filed in the instant case, petitioner resided in Roanoke, Virginia.

Petitioner is a licensed general contractor, and a real estate sales and management broker.

In 1988, petitioner formed Centurion Investments, an S corporation. Petitioner was the sole shareholder of Centurion Investments between 1988 and 1996.

Sometime in 1995, petitioner decided to sell for $100,000 Centurion Investments and Roanoke Development, another S corporation owned by petitioner, to Jane Parker (hereinafter sometimes referred to as Parker), petitioner's sales agent. Centurion Investments and Roanoke Development are hereinafter sometimes referred to collectively as the Corporations. Parker began to make payments to petitioner in 1995. See supra note 3. When petitioner received the entire $100,000 (sometime in 1996), then he transferred to Parker all his stock in the Corporations "effective" December 31, 1995.

On January 2, 1996, petitioner sold for $35,000 to Centurion Investments, or to Parker as 100 percent owner of Centurion Investments, the following Virginia general partnership interests: 28a percent interest in Meadow Green Associates; 44.36 percent interest in Williamsburg Manor Associates; 28a percent interest in Crystal Tower Associates; and 44.36 percent interest in Spanish Trace Associates. These interests are

hereinafter sometimes referred to collectively as the Partnership Interests. Parker paid the entire $35,000 to petitioner in 1996.

Petitioner filed timely 1995 and 1996 tax returns. He used the cash basis accounting method for his Schedule C (Profit or Loss From Business) real estate activities. Petitioner did not report the income from the sale of the Corporations on either of those tax returns.[4]

Centurion Investments' 1995 tax return shows petitioner as its tax matters person and sole shareholder; its 1996 tax return shows Parker as its tax matters person and sole shareholder.[5]

---

[4] It does not appear that petitioner reported on his 1996 tax return the $35,000 that he received from the sale of the Partnership Interests to Centurion Investments or Parker. In the notice of deficiency, respondent determined that petitioner realized a long-term capital gain of $823,016 on his sale of the Spanish Trace Associates and Williamsburg Manor Associates partnership interests. The record does not indicate how respondent determined the amount of this adjustment, or how respondent treated the gain or loss realized on the sale of the Meadow Green Associates and Crystal Tower Associates partnership interests. Nevertheless, respondent conceded this adjustment in full. It is unclear whether the parties dealt with the $35,000 elsewhere, and if so, then how they dealt with it.

Our findings as to the Partnership Interests are prompted by the later combining of the Partnership Interests sale and the Corporations sale in the consent decree and in the promissory note, discussed, infra.

[5] A tax matters person served a role under the so-called partnership audit procedures made applicable to subch. S corporations by sec. 4 of the Subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669, 1691, 1697, effective for taxable years beginning after Dec. 31, 1982. This was repealed by sec. 1307(c)(1) of the Small Business Job Protection Act of 1996, Pub. L. 104-188, 110 Stat. 1755, 1781, 1787, effective for taxable

(continued...)

In 1998, petitioner filed a petition under chapter 7 of the Bankruptcy Code. The bankruptcy trustee accused petitioner of bankruptcy fraud, and filed a complaint against petitioner, Parker, the Corporations, several other corporations, and the four partnerships, interests in which petitioner had sold to Parker in 1996. The parties in the complaint proceeding reached an agreement. On February 4, 2000, the bankruptcy court entered a consent order requiring petitioner and Parker to pay $300,000 "in guaranteed funds" to the bankruptcy trustee by February 14, 2000. This consent order further provided that, on the bankruptcy trustee's receipt of this $300,000, the transfers of (1) the stock in the Corporations and (2) the Partnership Interests "shall be void ab initio under Virginia Code Section 55-80",[6] and the bankruptcy trustee shall abandon her interest in

---

[5](...continued)
years beginning after Dec. 31, 1996. Thus, the procedures apply to the years in issue. However, because the Corporations had five or fewer shareholders, the procedures do not apply. See sec. 301.6241-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3002 (Jan. 30, 1987).

[6] Va. Code Ann. sec. 55-80 (Michie 2003) provides as follows:

Sec. 55-80. Void fraudulent acts; bona fide purchasers not affected.--

Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from
(continued...)

the Corporations and in the Partnership Interests.  As a result, the sale to Parker of the stock in the Corporations was void. Also on February 4, 2000, petitioner signed a demand promissory note to repay to Parker the $100,000 that she paid to petitioner pursuant to the stock sale, plus the $35,000 that Parker paid for the Partnership Interests, with a 6-percent annual interest rate. Petitioner was discharged from bankruptcy on August 23, 2000.

During 2000 through September 25, 2003, petitioner made a series of payments to Parker pursuant to the promissory note, the payments aggregating $28,933.23.  The record does not indicate how much of these payments was interest and how much was principal; nor does it indicate how much of any principal payments was allocable to the $100,000.

_____

Petitioner received the $100,000 from the sale of the Corporations' stock without restrictions on his disposition of the $100,000; there were not any such restrictions in effect in 1996.

_____

[6](...continued)
what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void.  This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

Petitioner did not recognize in 1996 an existing and fixed obligation to repay the $100,000; he did not make in 1996 provisions to repay the $100,000.

Parker did not make a gift of the $100,000 to petitioner.

## Analysis[7]

Respondent contends that petitioner was required to include in gross income for 1996 the $100,000 that petitioner received from the sale of the Corporations, and that this inclusion is required by the claim of right doctrine.

Petitioner maintains that the $100,000 that he received as consideration for transferring his stock in the corporations to Parker is not includable in gross income because his receipt of the money did not satisfy the elements of the claim of right doctrine. Specifically, petitioner contends that he did not receive the money under a claim of right, and there was a restriction on his economic use of the money. Petitioner contends in the alternative that the $100,000 was a gift and thus is excludable from gross income under section 102(a).

Respondent replies that petitioner's 1996 fraudulent purpose, which led to the bankruptcy court's voiding of the 1996

---

[7] Sec. 7491, which shifts the burden of proof to the Commissioner if the taxpayer meets certain conditions, does not apply in the instant case because the parties stipulated that the examination of petitioner's tax returns began before July 22, 1998, the effective date of sec. 7491. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.

transactions, does not protect petitioner from taxation on the $100,000, citing <u>James v. United States</u>, 366 U.S. 213 (1961). Respondent also contends that petitioner's 1996 fraudulent purpose contradicts petitioner's alternative contention that the $100,000 is excludable as a gift.

We agree with respondent.

A.  <u>Claim of Right Doctrine</u>

In <u>Nordberg v. Commissioner</u>, 79 T.C. 655, 664-665 (1982), affd. without published opinion 720 F.2d 658 (1st Cir. 1983), we described the claim of right doctrine as follows:

> This case presents merely another variation of the familiar "claim of right" doctrine pursuant to which the receipt of money under a claim of right which would otherwise represent taxable income must be treated as taxable income even though the recipient may be under a contingent obligation to return it at a later time.  In <u>North American Oil Consolidated v. Burnet</u>, 285 U.S. 417 (1932), often regarded as the seminal case in this area, the Supreme Court stated (at 424):
>
> > If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.  [Citations omitted.]
>
> Although this doctrine has been applied "in a variety of contexts," the situations have shared "a common factual element: the receipt of money or other property by a taxpayer with an imperfect right to retain it."  Wootton, "The Claim of Right Doctrine and Section 1341," 34 Tax Law. 297 (1981).  * * *
>
> Proceeding from the indisputable premise that "One of the basic aspects of the federal income tax is that there be an annual accounting of income" (<u>Healy v. Commissioner</u>, 345

U.S. 278, 281 (1953); fn. ref. omitted), the receipt of funds, without restriction as to use or disposition, must trigger the incidence of taxation, unless "in the year of receipt a taxpayer recognizes his liability under an existing and fixed obligation to repay the amount received and makes provisions for repayment."  Hope v. Commissioner, 55 T.C. 1020, 1030 (1971), affd. 471 F.2d 738 (3d Cir. 1973), cert. denied 414 U.S. 824 (1973).  As we have stated, "The mere fact that income received by a taxpayer may have to be returned at some later time does not deprive it of its character as taxable income when received" (Woolard v. Commissioner, 47 T.C. 274, 279 (1966); citations omitted), and the claim of right doctrine will apply "notwithstanding that the taxpayer may be under a contingent obligation to restore the funds at some future point" (Professional Insurance Agents of Michigan v. Commissioner, 78 T.C. 246, 270 (1982); citations omitted).  Where the taxpayer is required to repay some or all of the money in a later year, a deduction may then be available to him in the later year to the extent permitted by law (see Krim-Ko Corp. v. Commissioner, 16 T.C. 31, 40 (1951)),[8] but the amounts are income nonetheless in the year of receipt.

_____

[8]  Sec. 1341, I.R.C. 1954, offers even greater relief, in certain circumstances, by allowing the taxpayer to choose, in the year of repayment, between a deduction for the amount of the repayment and, in effect, a credit for the amount of tax that would have been saved in the year of inclusion if the repaid amount had been excluded from that year's gross income.

In the instant case, petitioner received the $100,000 from Parker in 1996.  We assume that petitioner was a cash basis taxpayer.  See Rubnitz v. Commissioner, 67 T.C. 621, 627 n.7 (1977).

1.  Restrictions on Use

The record does not include any evidence that petitioner was restricted in his use of this $100,000.  On brief, petitioner discusses the restriction-on-use question and asserts: "In the

case at hand, Petitioner and Jane Parker formed an implied consensual recognition at the time of the fraudulent sale to later reverse the transaction."

Firstly, petitioner conflates the restriction-on-use question with the obligation-to-repay question.

Secondly, petitioner does not state what restrictions there were, nor does he even ask us to make a finding of fact that there were restrictions.

Thirdly, in Nordberg there was evidence as to what the taxpayer did with the money he received. 79 T.C. at 662-664. There is no such evidence in the record in the instant case. We may fairly assume that petitioner is in a far better position than respondent to know what he in fact used the $100,000 for and what, if any, restrictions were imposed on his use of this money. From petitioner's failure to present to the Court evidence as to (1) what he did with the money and (2) what restrictions, if any, were imposed on the use of the money, we infer that if such evidence had been presented, then it would have been harmful to petitioner. See O'Dwyer v. Commissioner, 266 F.2d 575, 584 (4th Cir. 1959), affg. 28 T.C. 698, 703 (1957); Stoumen v. Commissioner, 208 F.2d 903, 907 (3d Cir. 1953), affg. a Memorandum Opinion of this Court dated March 13, 1953; Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

From the foregoing, we conclude, and we have found, that it is more likely than not that the $100,000 was received without restriction as to its disposition by petitioner, and there were not any such restrictions in effect in 1996.

2. Obligation To Repay; Provisions for Repayment

In the instant case, the record does not include any evidence that in 1996 petitioner recognized his liability to repay the $100,000, nor does the record include any evidence that in 1996 petitioner made provisions for repaying the $100,000. As noted supra, petitioner stated on brief that he and Parker "formed an implied consensual recognition * * * to later reverse the transaction." On brief, petitioner supports this implied agreement, as follows:

> The subsequent action of the Bankruptcy Court, voiding the fraudulent transaction, did not create an obligation to repay the $100,000.00. The bankruptcy court's decision instead caused the realization of the pre-existing obligation to repay Jane Parker by voiding the transfer of Petitioner's stock in Centurion Investments and Roanoke Development. This result is supported by the inherent nature and purpose of the fraud perpetrated as well as the immediate, voluntary drafting and signing of a promissory note between Petitioner and Jane Parker on the date that the Bankruptcy Court voided the transaction.

Firstly, petitioner does not ask us to make a finding of fact that there was an agreement or other recognition by him in 1996 that he had an "existing and fixed obligation to repay" the $100,000, or that in 1996 petitioner made provisions to repay the $100,000. Note that "a contingent obligation to restore the

funds at some future point" will not suffice to take the transaction out of the ambit of the claim of right doctrine. Professional Insurance Agents v. Commissioner, 78 T.C. 246, 270 (1982), and cases there cited, affd. 726 F.2d 1097 (6th Cir. 1984).

Secondly, petitioner does not enlighten us as to what it was that he recognized so that we might judge whether that amounted to a fixed and not a contingent obligation. Nor does petitioner enlighten us as to whether this "implied consensual recognition" was formed in 1996 and not at a later date. Nor does petitioner enlighten us as to what provisions for repayment, if any, he made in 1996. Cf. Nordberg v. Commissioner, 79 T.C. at 662-663, 665-666.

Thirdly, petitioner states that the bankruptcy court's decision "caused the realization of the pre-existing obligation to repay Jane Parker". It is far from clear what this is intended to mean. It suggests that the "pre-existing obligation" was not "real" until the bankruptcy court entered the consent order on February 4, 2000. That in turn suggests that, in 1996, there was not any existing and fixed obligation to repay; it further suggests that, if there was any 1996 "implied consensual recognition" of anything, then that implied consensual recognition may have been an understanding that the $100,000 might have to be repaid if petitioner got caught.

Fourthly, the promissory note on which petitioner relies does not help petitioner's case on this record.  The note was for $135,000--the $100,000 Parker paid for the Corporations plus the $35,000 Parker paid for the Partnership Interests.  The note bears interest at 6 percent per year.  The parties have stipulated that, through September 25, 2003, petitioner's payments to Parker on the note aggregated $28,933.23.  This is approximately the amount of the required interest payments alone. Thus, we cannot conclude from the parties' stipulation or anything else in the record to which our attention has been directed, that petitioner has yet repaid any of the $100,000 that Parker paid to him for the Corporations.  Also, (1) petitioner's failure to repay Parker promptly in 2000,  after the consent order was entered and after petitioner was discharged from bankruptcy, and (2) petitioner's failure to repay Parker in the 3½ years after he signed the promissory note, suggest that petitioner did not in 1996 make any provisions for repayment.  Of course, "The best laid schemes o' mice and men/Gang aft a-gley." Burns, "To a Mouse", st. 7, in Bartlett's Familiar Quotations 377 (17th ed. 2002).  But if petitioner had in fact made any such provisions, then we would expect to have heard from him what those provisions were.  O'Dwyer v. Commissioner, 266 F.2d at 584; Stoumen v. Commissioner, 208 F.2d at 907; Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. at 1165.

Fifthly, the lack of evidence--or even clear assertions--as to what petitioner did in 1996 with regard to a supposedly then-fixed obligation, combined with petitioner's delay until 2000 in acknowledging an obligation, combined with petitioner's failure through September 25, 2003, to repay any significant part (or perhaps any part at all) of the $100,000, cause us to conclude, and we have found, that it is more likely than not that (1) petitioner did not recognize in 1996 an existing and fixed obligation to repay the $100,000, and (2) petitioner did not make in 1996 provisions to repay the $100,000.

3. Loan

Petitioner urges us to apply the substance over form doctrine and, on answering brief, refers to "the $100,000 Jane Parker loaned Petitioner in 1996." We have stated that

> it is the substance of a transaction rather than mere form which should determine the resultant tax consequences when the form does not coincide with economic reality. Commissioner v. Court Holding Co., 324 U.S. 331 (1945); Higgins v. Smith, 308 U.S. 473 (1940); Foster v. Commissioner, 80 T.C. 34, 201 (1983)[affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985)]; Gray v. Commissioner, 56 T.C. 1032 (1971). The taxpayer, as well as the Commissioner, is entitled to assert the substance-over-form argument although in such situations taxpayers may face a higher than usual burden of proof. * * * [Glacier State Electric Supply Co. v. Commissioner, 80 T.C. 1047, 1053 (1983).]

It is not clear whether petitioner's "loan" contention is intended to be (1) an alternative or (2) merely an attempt to

describe the legal pigeonhole that would apply if we were to agree with petitioner's claim-of-right contentions.

If the latter, then the short answer is that we have rejected petitioner's claim-of-right contentions and concluded that petitioner received the $100,000 under a claim of right. If the former, then the short answer is that there are no indicia of a loan, and we conclude that the form that petitioner used in 1996--a sale--correctly follows the substance of what petitioner did.

We hold for respondent on this issue.

B. $100,000 as a Gift

Petitioner contends, in the alternative, that the $100,000 that he received from Parker was a gift, and thus, was excludable from gross income under section 102(a). Petitioner argues that, because the bankruptcy court declared the transaction between Parker and himself void ab initio, petitioner never transferred ownership of the corporations to Parker; thus, petitioner reasons, Parker's intent in transferring the money to petitioner must have been out of disinterested generosity because she was under no obligation to do so, and she received nothing in return.

Respondent maintains that the $100,000 that petitioner received from Parker does not meet the definition of a gift, and thus, is not excludable from gross income under section 102(a).

We agree with respondent.

Section 102(a)[8] provides that gifts are excluded from gross income. The Supreme Court defined "gift" as a transfer of property that proceeds from a "'detached and disinterested generosity,'" "'out of affection, respect, admiration, charity or like impulses.'" Commissioner v. Duberstein, 363 U.S. 278, 285 (1960)(quoting Commissioner v. LoBue, 351 U.S. 243, 246 (1956); Robertson v. United States, 343 U.S. 711, 714 (1952)). The transferor's intent in making the transfer is the most critical consideration in determining whether the property transferred was a gift. Id.

Applying those considerations to the instant case, it is clear that the $100,000 that Parker transferred to petitioner was not a gift. While we do not have direct evidence of Parker's intent, we note that when she transferred the $100,000 to petitioner, she received all petitioner's stock in the Corporations in return. Thus, the $100,000 transfer to petitioner was not motivated by a detached and disinterested generosity. Moreover, petitioner memorialized his obligation to repay Parker the $100,000 after the bankruptcy court voided ab initio the transfer of the stock.

---

[8] SEC. 102. GIFTS AND INHERITANCES.

(a) General Rule.--Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

On these facts, we conclude that Parker did not gift the $100,000 to petitioner.

We hold for respondent on this issue.

To take account of the parties' concessions and the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.